**LEAANA L. FUATA, Claimant**

**v.**

**I.S. MULITAUAOPELE and FOFOGAOTUMUA KONELIO MULITAUAOPELE, Objectors**

**[In the Matter of the Matai Title "Mulitauaopele" of the Village of Lauli'i]**

High Court of American Samoa
Land and Titles Division

MT No. 5-89

November 13, 1990

Before REES, Associate Justice, TAUANU'U, Chief Associate Judge, AFUOLA, Associate Judge, MATA'UTIA, Associate Judge, and TAIMANU, Associate Judge.

Counsel: For Claimant, Tau'ese P.F. Sunia
          For Objector Konelio, Gata E. Gurr
          Objector Pele Ivi pro se

On Motion for New Trial:

This action concerns the selection of a successor to the late Mulitauaopele Tamotu of the Village of Lauli'i.

## I.     *Facts and Procedural History*

This case began as most matai title cases do, with an offer by one family member to register the title in his own name and an objection by another member of the family who contended that he and not the claimant should hold the title. In this case the claimant was Leaana Lui Fuata (hereinafter "Leaana") and the objector was F. Konelio Mulitauaopele (hereinafter "Konelio"). There was, however, one extraordinary development: another objector appeared, not to claim the title for himself, but to argue that neither of the other contenders was entitled to it.

This objector was I.S. Mulitauaopele (hereinafter "Ivi" or "Pele Ivi"), who stated his argument in a motion to dismiss this action. This argument, succinctly stated, was that there is only one genuine Mulitauaopele or Pele family in Lauli'i and that it is the family headed by Pele Ivi himself, rather than the one headed by the late Mulitauaopele Tamotu. The registration of the Mulitauaopele title by Tamotu in 1938 and by Tamotu's father Pataua in 1927, in apparent conformity with the territorial statute governing registration of matai titles --- and the recognition of Tamotu and his predecessors by the traditional institutions of the village, county, district, and Territory at various times during the last century --- were explained as temporary irregularities to which the Court must put an end. It is central to objector Ivi's argument that most members of the family headed by the late Mulitauaopele Tamotu (including Tamotu himself as well as claimant Leaana) are not members of the Mulitauaopele family at all.

After hearing lengthy argument and testimony by Pele Ivi in support of his motion to dismiss, the Court denied the motion.

The Court acknowledged the undisputed facts that there are two distinct families in Lauli'i calling themselves "Mulitauaopele" or "Pele" and that the two families are not related by blood except insofar as some people happen to be the descendants of intermarriages between members of the two families. (The undisputed fact that such intermarriages have taken place is itself perhaps the strongest evidence that the two families are separate and distinct families, as marriage is strictly forbidden between even distantly related members of the same Samoan communal family.) The Court did not, however, draw from these facts the conclusion urged by Pele Ivi.

Rather, the Court also took note of the equally undisputed facts that the two unrelated Mulitauaopele families came into being after the original line of direct descendants from the first Mulitauaopele title holder died out; that one of the present families is related to the original line of title holders by collateral descent; and that the other is related by marriage, by adoption, and perhaps also by some traditional method of conferring a title such as *igagato* or *matu'upalapala*. The Court concluded that neither law nor Samoan custom forbids the continued existence of both families. *In re Matai Title Mulitauaopele*, 16 A.S.R.2d 63 (1990).

The Court went on to decide that objector Konelio was better qualified to hold the title than claimant Leaana. *Id.* at 71.

Pele Ivi now moves for a new trial. His motion assigns five errors to our decision.

*II. "Errors of Law and Fa'a-Samoa"*

Three of the assignments of error, quoted here in their entirety, are as follows:

1. The Trial Court erred in its decision as "clearly erroneous" as a matter of fa'a-Samoa;

2. The Trial Court erred in its decision as "clearly erroneous" as a matter of law;

. . . .

78

5. The Court cannot judicially legislate, it must follow the statutory guidelines, not create its own law and its own brand new sets of matai.

### A. Jurisdiction

The three assignments quoted above do not even begin to conform with the requirement of T.C.R.C.P. Rule 7 that a motion "shall state with particularity the grounds therefor." Indeed, they are not assignments of error at all, but simply three different ways of saying that the movant believes the Court to have gotten the case wrong.

This Court has repeatedly warned the Bar (of which objector Pele Ivi, who represented himself in this action, was a member for some years) that motions for new trial must clearly apprise the trial court of the specific errors being alleged. *See, e.g., Taulaga v. Patea*, 17 A.S.R.2d 34 (1990); *Government of American Samoa v. King*, AP No. 19-1970, Opinion and Order at 3 (1970); *Judicial Memorandum No. 2-87*, 4 A.S.R.2d 172 (1987). A general statement that the Court erred as a matter of fact, law, custom, etc., obviously does not fulfil this requirement. (An accusation that the Court has "judicially legislated," without further detail, adds to such general suggestions of error only the additional suggestion that the error was a grave and perhaps a deliberate one.)

Moreover, the requirement of a motion for new trial conforming to the "particularity" requirement of Rule 7, filed within the statutory ten-day deadline, is a mandatory prerequisite to the exercise of jurisdiction by the Appellate Division. A.S.C.A. § 43.0802(a); *see Taulaga, supra; King, supra; Fai'ivae v. Aumavae*, AP 2-76 (1976); *Judicial Memorandum, supra*, 4 A.S.R.2d at 174. As assignments of error Nos. 1, 2, and 5 are not assignments of particular errors to the opinion, we cannot consider them as such.

Pele Ivi's motion for new trial did contain a statement to the effect that it would be supplemented by a supporting memorandum. Had such a memorandum been filed within the statutory deadline, and had it stated specific grounds of error, it would have cured the deficiency in the original motion. No memorandum was ever filed, however, either before or after the deadline. At oral argument on the motion, Pele Ivi made a statement reiterating almost everything he had said during his testimony and argument on the day of trial. This statement came well

79

after the statutory deadline for stating particular grounds of error and therefore cannot be construed as an amendment to the motion for a new trial. It is, accordingly, insufficient to confer jurisdiction for purposes of A.S.C.A. § 43.0802.

Out of an abundance of caution, however, and in order to avoid giving a litigant the impression that he has lost his case only because of a jurisdictional "technicality," we briefly address the gist of what he said at oral argument.

### B.    Hereditary Right

Objector Pele Ivi agreed with the other parties that the original title holder, Mulitauaopele Leatisua, had no direct descendants after Manuleavi, the third title holder. He claimed, however, that he himself has "Mulitauaopele blood" by virtue of descent from a line of Pele title holders tracing its ancestry to a sister of the original title holder. The Court accepted Ivi's version of his own genealogy, but observed that such collateral descent gives no *greater* hereditary right than does the other Pele family's descent from an equally long and ancient line of Pele title holders which, like Ivi's line, first came into being by other means than direct descent.

In the many years that this Court has been construing the customary and statutory requirement of "hereditary right" to matai titles, two formulas have generally been employed to calculate such right: direct descent from the original title holder and direct descent from the nearest title holder. The history and application of these two formulas are discussed in *In re Matai Title Tauaifaiva*, 5 A.S.R.2d 13, 13-15 (1987), and *In re Matai Title Fano*, 4 A.S.R.2d 148 (1987). For early applications of the two competing formulas, compare *Taofi v. Foster*, 1 A.S.R. 464 (1932) (descent from first title holder) with *Seuega v. Laisene*, 2 A.S.R. 82 (1939) (descent from nearest title holder). In both formulas a person's blood relation to each of his parents is 1/2, to each of his grandparents 1/4, to each of his great-grandparents 1/8, and so forth. In neither formula is there any such fractional statement for a relationship to a brother, sister, aunt, uncle, or cousin; only direct ancestors count.

As we observed in our original opinion, Pele Ivi is correct in his contention that the ostensible title holders in the Pele Tamotu (Leaana) line would fail to meet the more rigorous test of blood descent from the original title holder. They can state their fractional relationships back to

80

Pele Taliloa, Pele Esera, or perhaps Pele Ta'ita'i, but can state no such relationship at all to Pele Leatisua. We also observed, however, that the title holders in Pele Ivi's own line (Tialavea) would also fail this test. They can trace their relationship back perhaps as far as Pele Talaiva or Pele Savea, but can state no fractional relationship to any earlier Pele.

By the more flexible test of blood relationship to the nearest title holder, both lines are legitimate. Pele Ivi himself, for instance, had a blood right to the title by virtue of his 1/2 relationship to his father Pele Suiava. The late Pele Tamotu, from the competing Leaana line, had a 1/2 relationship to his own father Pele Pataua. The two candidates in the present case, Konelio and Leaana, have relationships of 1/2 and 1/8 to Pele Pataua and Pele Esera respectively.

## C.     Res Judicata

Our holding is not in conflict with the Court's holding in *Titi v. Suiava*, 2 A.S.R.2d 160 (1945), that Pele Ivi's father Pele Suiava had a hereditary right to the Pele title. Our holding is not that *neither* of the current Pele lines is legitimate, but that under the circumstances --- the original line of direct blood descendants having died out over a hundred years ago and two distinct families having existed since then --- *both* must be regarded as legitimate. Neither the *Suiava* case nor that on which it relied, *Lavatai v. Savea*, 2 A.S.R. 76 (1939), contradicts this holding. Those cases involved internecine disputes within Pele Ivi's own (Tialavea) family; both seem to recognize that within that family, descent from the line of Peles tracing its ancestry to Pele Leatisua's sister is precisely what is meant by "hereditary right." We reaffirm those holdings, and add that within the distinct family headed by the late Pele Tamotu, descent from the Peles in the Leaana line is the test of hereditary right.

The *Suiava* and *Lavatai* cases did not, as Pele Ivi seems to contend, purport to establish a rule of law that the *only* test of hereditary right for *anyone* claiming to be a "Mulitauaopele" is descent from the original title holder's sister; they spoke only to the rights of members of Pele Ivi's own (Pele/Tialavea) family and did not say anything at all about what constituted a hereditary right within the separate (Pele/Leaana) family of Pele Tamotu. Had they made any such statement, it would not have had the effect of *res judicata* or any effect at all, because the question was not before the Court and because neither Pele Tamotu (the legally registered holder of the title "Mulitauaopele" and head of the Pele/Leaana family at the time *Suiava* and *Lavatai* were

81

decided) nor any member of his family was a party to either of the two cases.

The case now before us is the first in which the Court has ever been confronted with the question of hereditary right to the Mulitauaopele title held by Tamotu and his predecessors. Leaana and Konelio proved their hereditary right to that title in the only way a member of the family could possibly do: through descent from other Mulitauaopele title holders in the Leaana line. It ill behooves Pele Ivi to urge the imposition on the Pele/Leaana family of a standard of hereditary right so rigorous that it would wipe out the family altogether, while relying on the flexible standard adopted by the Court in *Suiava* and *Lavatai* to insulate his own line from similar scrutiny.

### D.     Blood and Adoption

Nor, contrary to another assertion made by Pele Ivi in oral argument, does our holding suggest that adoption itself confers a hereditary right to a matai title. In tracing a candidate's ancestry to the nearest title holder --- the formula applied in the vast majority of cases over the years to determine hereditary right --- only blood relationships count. Thus the natural son of a previous title holder has a 1/2 relationship to the title, the natural grandson a 1/4 relationship, whereas the adopted son or grandson has no fractional relationship at all. Nothing in our holding contradicts or changes this. Both the present candidates, Konelio and Leaana, are natural descendants of previous Mulitauaopele title holders: Konelio is a natural son of Pele Pataua, Leaana a natural son of a natural daughter of a natural daughter of Esera. Both proved their descent from the title by blood, not adoption.

The contention urged by Pele Ivi is a very different one: that whenever it appears that a matai obtained his title for a reason other that blood descent, even if this happened a hundred (or presumably a thousand) years ago, and even if his descendants have held the title ever since, the line is illegitimate and must be extinguished by the Court at the request of the "true" descendants (including not only direct descendants but also great-nephews many times removed) of the title. No holding of this Court stands for that Draconian proposition, and we decline to find it entailed by the "best hereditary right" criterion of A.S.C.A. § 1.0409.

The traditions of ancient Samoa abound with stories of matai who obtained their titles for reasons other than blood descent from a previous title holder. Although such cases were always the exception

rather than the rule, it seems clear that such customary institutions as *igagato* (conferral as a reward) and *matuʻupalapala* ("commission" to avoid the extinction of the line) did exist. Since the adoption of the "hereditary right" criterion by statute in the early part of this century, the Court is not free to recognize such reasons for awarding a disputed matai title to a person who is not descended from a previous title holder. So far as we can tell, however, no one has suggested before now that the matai title statute gives the court the duty, or even the power, to right ancient wrongs by retroactive application of the four statutory criteria to events that happened hundreds or thousands of years ago.[1]

## E.    The "Joint Title Holders" Cases

We also reiterate our original observation that cases involving "joint" or "split" holding of the same title by more than one member of the same family are inapposite to the case before us. The Pele/Tialavea and Pele/Leaana families are unrelated by blood and own separate lands; if either family's title were to be abolished, its members would not have the option, as those in the "joint" and "split" cases did, of participating in affairs of the other family and eventually contending for its title. (In addition to these and the other indicia of separateness cited in our original opinion, *In re Matai Title Mulitauaopele*, 16 A.S.R.2d at 67-68, we note that on several occasions Pele Ivi and the late Pele Tamotu were selected by the traditional institutions of the county of Suʻa and Vaifanua to serve as the two Senators for that county, each, of course, occupying a separate Senate seat.)

---

[1]     Indeed, the matai title statute appears explicitly to forbid such application. A.S.C.A. § 1.0413 provides that "[t]his chapter [the matai title statute] may not have the effect of divesting any person of a title registered before 1 November 1932." Although this language might be read as merely forbidding the divestiture of a title from a particular holder who obtained a title illegally before 1932, while permitting the judicial extinguishment of the title itself after the death of that particular holder, we are aware of no such instance. Many titles in American Samoa were created or conferred long ago in ways which, had the present statute been then in force, would have been illegal, and yet these titles and all their holders are now recognized as legitimate. *See, e.g., Moeaʻi v. Teʻo*, 9 A.S.R.2d 107 (1988), in which we held that a matai title long registered in accordance with law and recognized by the village council must be regarded as a matai, notwithstanding the tradition that the office of bearer of the ava cup is not a matai title.

At the very worst, either the Pele/Leaana or the Pele/Tialavea family was guilty of establishing a "new" matai title for itself at some time during the Nineteenth Century. This was not illegal, however, until 1969 when the matai title registry was closed. *See* A.S.C.A. § 1.0401(b).

### F. Samoan Logic

Finally, we note the contention to which Pele Ivi gave principal emphasis at oral argument, to the effect that our decision was "un-Samoan," did not use "Samoan logic," and would destroy or radically change Samoan custom. The most appropriate response is that the original decision to deny the motion to dismiss was made by the Samoan Associate Judges, who have the principal authority in matai cases, the presiding Justice concurring but not voting; that the written opinion, although composed by the presiding Justice, reflects the thoughts of the Associate Judges and was written after lengthy consultation with them; that they did not sign their names to it lightly; and that they all continue to believe it to be fully consistent with Samoan custom.

### III. Judicial Bias

The two remaining assignments of error are reasonably specific. One of them urges that an Associate Judge asked certain questions of one party/witness which reflected "obvious bias against our Motion to Dismiss."

We note that the questions to which this assignment alludes were asked *after* the Motion to Dismiss had already been denied. Even accepting the rest of the argument --- that "the Samoan Judges are in fact jury," that questions by one of their peers might therefore improperly sway the "jury" against a litigant, and that questions by a judge reflecting an opinion on the evidence rather than a personal animus against a litigant should be regarded as impermissible "bias" --- these particular questions could not possibly have had any role in bringing about a decision that had *already been made and announced*. The only matter before the Court at the time these questions were asked was which of the two candidates, Konelio or Leaana, should be selected to hold the title. The only litigant who could possibly have been prejudiced by any questioning at this point was the losing candidate, Leaana. He has not moved for a new trial.

### IV. "Premature Ruling"

Finally, objector Pele Ivi argues that the Court erred "in that it prematuredly ruled on our Motion to Dismiss before all of the evidence was in; the Court's sudden change of procedure at the morning of the 1st day of trial was unfair to Movant."

The Court's recollection of this incident is that after opening statements from all parties and the presentation of evidence by Pele Ivi on behalf of his motion to dismiss (consisting of his statement from the witness stand about his version of the history of the Mulitauaopele 'itle and his understanding of Samoan custom), we announced that the Court would recess.

The specific purpose of this recess, clearly announced in open court, was to decide whether we should rule on the motion to dismiss or wait until the other parties had presented their evidence. There was no objection. At the conclusion of the recess, we announced that the motion would be denied and stated our reasons for the denial. Again there was no objection to the procedure we had followed in considering the motion. The movant did observe that he disagreed with our ruling on the merits, and we discussed his rights to a move for reconsideration and to appeal. (We also extended objector Pele Ivi the courtesy, over the objection of counsel for Leaana, of being permitted to question the two other parties during their presentation of evidence on the remaining issue before the Court, in order that he might bring out any facts he should regard as helpful to any subsequent motions he might wish to make.)

Because there was no objection to our ruling on the motion to dismiss, either when we announced we were about to decide whether we could rule on it or a few minutes later when we actually did rule on it, any such objection must be regarded as waived. It would in any event be denied on its merits. *See Willis v. Fai'ivae*, 12 A.S.R.2d 37, 39 (1989) ("There was no reason why the trial court was required to hear more evidence when [a litigant's] case in chief was insufficient to make out his claim. There was no unfairness and no error.")

## V. Order

Accordingly, the motion for new trial is denied.

It is so ordered.